**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| James Chavez, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO. 8:24-cv-02362-TPB-AEP |
| v. | <u>FIRST AMENDED CLASS</u><br><u>ACTION COMPLAINT</u> |
| Launch Holdings, LLC, and Launch Labs LLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

**Nature of this Action**

1.      James Chavez ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Launch Holdings, LLC and Launch Labs LLC d/b/a Launch Control (collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.      In short, Defendants operate a large-scale telemarketing platform whose purpose is, fundamentally, to violate the TCPA, and aid their real estate investor clients in violating the TCPA, by providing an all-inclusive platform that locates consumer leads to deliver text messages to by scouring public record databases, drafting text messages to send to those consumers, and physically sending those text messages.

3.      Or, as Defendants put it, "[w]e have sent millions of text messages and

helped our subscribers close thousands of deals."[1]

4.     Thus, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

### Parties

5.     Plaintiff is a natural person who at all relevant times resided in Portsmouth, Virginia.

6.     Launch Holdings, LLC is a Montana limited liability company with its headquarters in Tampa, Florida.

7.     Launch Labs LLC is a Delaware limited liability company with its headquarters in Tampa, Florida.

8.     Upon information and good faith belief, Launch Labs LLC is the operations-focused face of "Launch Control," whereas Launch Holdings, LLC is a holding company for the "Launch Control" enterprise, and the extent of each LLC's individual involvement in the "Launch Control" telemarketing enterprise and decision-making will be further explored in discovery.

9.     Defendants—for reasons that are presently unknown—purport to use the name "Launch Control, LLC," but there are no actively registered entities bearing that

---

[1]     https://launchcontrol.us/launch-affiliates/ (last visited November 18, 2024).

name in either Florida or Montana, nor is there any registered fictitious entity bearing either that name, or the name "Launch Control," in those states.

## Jurisdiction and Venue

10.     This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

11.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as Defendants are based in this district, and a significant portion of the events giving rise to this action occurred in this district.

12.     In particular, Defendants directed their text messages to Plaintiff's telephone from this district.

## Factual Allegations

13.     Plaintiff is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number— (752) 292-XXXX.

14.     Plaintiff uses his cellular telephone as one of his personal residential telephone numbers.

15.     In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

16.     Plaintiff registered his cellular telephone number with the DNC on December 5, 2019.

17.     Beginning around April of 2024 and continuing through the present,

Plaintiff began receiving text messages on his cellular telephone from several telephone numbers, including:



18.    Plaintiff did not recognize the senders, is (and was) not selling his home, and was not looking to sell his home.

19.    After receiving multiple text messages from different telephone numbers, Plaintiff responded to the sender solely to identify the entity responsible for sending those messages.

20.    Because Plaintiff did not consent to receive these text messages, and because Plaintiff's telephone number was registered to the DNC Registry, Plaintiff filed suit against the entities identified in these text messages, in the matter captioned

*Chavez v. Kubi Homes, LLC et al.*, Case No. 2:24-cv-01779-SMB (D. Ariz.), which has since been voluntarily dismissed without prejudice.

21.     Following the filing of that lawsuit, Plaintiff discovered that Defendants were the entities that (1) drafted the majority of the text messages; (2) provided the telephone numbers to be called; and (3) physically sent the text messages to Plaintiff's cellular telephone number.

22.     As a result, Plaintiff, through his counsel, investigated the nature of Defendants' business, and discovered that Defendants are, in essence, running a large-scale telemarketing platform that premises its core operations on intentional violations of the TCPA.

23.     Specifically, Defendants tout themselves to be "the ultimate choice for achieving text marketing success" for real estate investors and telemarketers, offering a host of services as an "All-in-one CRM" platform.[2]

24.     In other words, Defendants seek to sell "text marketing platforms" to real estate businesses, while also going *far* beyond offering a mere dialing platform or customer management platform, crossing the line into actually drafting text messages, sending those text messages, *and even sourcing "leads" by identifying potential consumers and providing the suspected contact information for those consumers for Defendants or their clients to deliver text messages to*, regardless of whether those "leads" provided consent.

25.     First, Defendants promote that they prepare the language of their text

---

[2]     https://launchcontrol.us/platform/ (last visited October 7, 2024).

message campaigns they offer to real estate businesses, noting that they provide AI-drafted text messaging templates for their customers with mail-merge type blanks for clients to insert their names or potential lead names while rotating those templates monthly to avoid being flagged as spam,[3] all while touting that their text messages enable Defendants and their clients to eliminate opt-out language to prevent text message recipients from being able to opt out of communications sent by Defendants.[4]

26.    For example, the following promotional materials are posted on Defendants' website, demonstrating outbound text message templates Defendants provide which, on their face, imply a lack of prior express written consent:

---

[3]        https://launchcontrol.us/product/texting-templates/ (last visited November 18, 2024).

[4]        https://launchcontrol.us/custom-text-marketing-campaigns/ (last visited November 18, 2024).



27.     Upon information and belief, in exchange for compensation, Defendants either assume direct control over the content of text messages, or provide template communications and advises or influences the messaging to be sent out for their clients, in order to maximize deliverability.

28.     Second, Defendants provide potential consumer "leads" to their clients for the purposes of those clients delivering mass text messages to those consumers through their "DealMachine" offering.

29.     Specifically, Defendants disclose that they "[p]ull leads into a marketing list from our database of over 150 million properties across the United States," that "updates daily with data directly from county record," and use that information to provide potential prospect information for their clients to then telemarket to those

leads.[5]

30.    As Defendants describe it:

In the past, it was up to you to find properties Driving For Dollars or networking in local communities. Now with more than 70 pre-made filters, you can add lists of people, the exact people you want to get your text messages in front of, in a matter of minutes. If you still wanna go driving around, quickly get access to the prospect data of any home you come by that you want to reach out as well.[6]

31.    Moreover, through their "Launch Leads" service, Defendants promote that they sources leads for their customers, providing promotional materials where Defendants' real estate customers brag that they went from "texting anywhere between 60 to 65,000 text messages per month" to "125,000 text messages per month" based on leads provided by Defendants.[7]

32.    Third, Defendants rather bluntly acknowledge that their services are intended to be used for contacting consumers absent their prior express consent via mass text messaging campaigns.

33.    For example, if their clients do not use Defendants' own lead generation services through Launch Leads, Defendants nevertheless encourage them to source leads by researching public records databases to find property owners that they believe are interested in selling their home, and then using those records to identify telephone

---

[5]    https://launchcontrol.us/partners-integrations/dealmachine/ (last visited November 18, 2024).

[6]    *Id.*

[7]    *See* Launch Leads Brochure, attached as Exhibit A.

numbers to begin sending telemarketing messages to those telephone numbers.[8]

34.     Defendants—presumably cognizant of their blatant disregard for the TCPA—tailors their communications in an attempt to skirt around the TCPA's prohibitions on telemarketing to telephone numbers on the DNC Registry by providing templates and modifying communications to avoid the appearance of directly soliciting recipients, instead attempting to avoid appearing "too direct" and relegating the *true* nature of their solicitations to subsequent, in-person or telephone call follow-ups.

35.     Defendants also advise that "[y]ou cannot explicitly sell a product or service, use scrambled messages, request payments or credit card info, or spam your list. So where do you start to get yourself out of the gray area and into the white space where deals are waiting for you?"[9]

36.     Defendants answer this question not by advocating that they or their clients obtain prior express written consent before contacting consumers on the DNC Registry; rather, they advise that "[i]n real estate, you could be driving by collecting numbers from properties or using publicly available data. Either way, you never want to solicit to sell anything. You're looking to *purchase* a property."[10]

37.     Ironically, however, in describing their TCPA evasion policies,

---

[8]     https://launchcontrol.us/blogs/your-guide-on-how-to-get-real-estate-leads-online/     (last visited November 18, 2024).

[9]     https://launchcontrol.us/blogs/tcpa-compliance-101-what-it-means-for-real-estate-investors/ (last visited November 18, 2024).

[10]     *Id.* (emphasis in original).

Defendants describe their communications as "solicitations and marketing messaging."

38.    And, despite Defendants' suggestions to the contrary, the purpose of the text messages at issue was to advertise and to market Defendants' business or services, or the business or services of Defendants' clients, who, upon information and belief, are primarily real estate wholesalers.

39.    Specifically, as a text messaging platform that telemarkets for real estate firms, Defendants sought to solicit Plaintiff to engage in real estate transactions with Defendants' affiliates.

40.    And, to the extent that Defendants argue that the underlying text messages do not qualify as "telemarketing" or "solicitation," Defendants would be mistaken, because:

    a)    The website in the underlying text messages, https://www.kubihomes.com, explains that the Kubi-branded entities seek to purchase and resell residential real estate;

    b)    The website also advertises that the Kubi-branded entities pair numerous services with their offers to purchase properties from consumers;

    c)    Implicit among these service offerings is the arranging of title, escrow, preparing paperwork, and all other ancillary services associated with the purchase or sale of a home;

    d)    Upon information and belief, in exchange for providing these services, the Kubi-branded entities seek to acquire Plaintiff's—and other

consumers'—homes at below fair market values, to then re-sell or re-assign to a third-party purchaser for profit;

e)   Consumers such as Plaintiff would pay an effective fee to the Kubi-branded entities for their numerous ancillary services through the Kubi-branded entities' payment of a reduced purchase price to those consumers;

f)   The Kubi-branded entities sought to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, are compensated obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price;

g)   The Kubi-branded entities would be (and, upon belief and information, are) compensated for their services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home; and

h)   The Kubi-branded entities are *precisely* the type of clients that Defendants focus their business on, and all of their product and service offerings are intended to facilitate real estate telemarketing and cold-calling.

41.   Thus, given that Defendants 1) controlled, in large part, the content of the text messages sent by their clients; 2) provided consumer telephone numbers as "leads" to be sold to their clients; 3) physically sent the text messages at issue; 4) coached and assisted clients in contacting consumers for telemarketing purposes while knowing that those consumers did not provide prior express written consent for those messages; 5) coached and assisted clients in structuring their communications in a

11

manner to attempt to evade the TCPA's rules and regulations; and 6) *built their entire business around creating a platform for cold-call telemarketing to consumers for real estate services*, Defendants are liable for each and every text message they sent, for their benefit or the benefit of their clients, to consumers who did not provide prior express written consent to receive those messages.

42.    Plaintiff is not, and was not, interested in Defendants' services or marketing, nor was he interested in the Defendants' client's services or marketing.

43.    Plaintiff did not previously contact or transact with Defendants or the Kubi-branded entities.

44.    Upon information and good faith belief, Defendants sent, or caused to be sent, over twenty advertisement or telemarketing text messages to Plaintiff's cellular telephone between 2022 and the present, both in the guise of Kubi-branded marketing, and Defendants' other clients' marketing.

45.    Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to his cellular telephone number.

46.    Defendants sent the text messages at issue for non-emergency purposes.

47.    Upon information and good faith belief, Defendants sent the text messages at issue voluntarily.

48.    Defendants continue to operate their Launch Leads service through the present day.

49.    Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to his cellular telephone number.

50.     Plaintiff suffered actual harm as a result of the text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

51.     Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

## Class Action Allegations

52.     Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:[11]

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Launch Control, LLC or Launch Labs LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Launch Control, LLC's or Launch Labs LLC's, or their business partners' goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Launch Control, LLC or Launch Labs LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

> All persons and entities throughout the United States (1) to whom Launch Control, LLC or Launch Labs LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Launch Control, LLC's or Launch Labs LLC, or their business partners' goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of Launch

---

[11]     The "Federal Do-Not-Call Registry Class" and the "Sender Identification Class" are collectively referred to as the "Classes."

Control, LLC or Launch Labs LLC or their business partner affiliate(s), and a telephone number or address at which Launch Control, LLC or Launch Labs LLC or their business partner affiliate(s) may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

53.     Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

54.     Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

55.     The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

56.     The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

57.     In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

58.     Plaintiff's claims are typical of the claims of the members of the Classes.

59.     As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered his telephone number with the DNC Registry.

60.     As they did for all members of the Sender Identification Class, Defendants delivered solicitation text messages to Plaintiff's telephone number where

the subject text messages did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted.

61.     Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

62.     Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

63.     Plaintiff suffered the same injuries as the members of the Classes.

64.     Plaintiff will fairly and adequately protect the interests of the members of the Classes.

65.     Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

66.     Plaintiff will vigorously pursue the claims of the members of the Classes.

67.     Plaintiff has retained counsel experienced and competent in class action litigation.

68.     Plaintiff's counsel will vigorously pursue this matter.

69.     Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

70.     The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

71.     Issues of law and fact common to all members of the Classes include:

        a.      Defendants' conduct, pattern, and practice as it pertains to

delivering advertisement and telemarketing text messages;

b.      For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c.      For the Sender Identification Class, Defendants' practice of delivering text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

d.      Defendants' violations of the TCPA; and

e.      The availability of statutory penalties.

72.     A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

73.     If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

74.     The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

75.     The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

76.     These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

77.     The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

78.     The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

79.     There will be no extraordinary difficulty in the management of this action as a class action.

80.     Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

81.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-80.

82.     A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946,

954 (9th Cir. 2009).

83.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

84.     Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

85.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

86.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Federal Do-Not-Call Registry Class who registered their respective residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

87.     Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and the Federal Do-Not-Call Registry Class, more

than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

88.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

89.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-80.

90.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

91.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

92.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

93.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

94.    Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, solicitations to telephone subscribers such as Plaintiff and the Sender Identification Class while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

95.    Defendants therefore violated 47 U.S.C. § 227(c)(5) because of their violations of 47 C.F.R. § 64.1200(d)(4).

96.    Plaintiff and the Sender Identification Class were harmed by Defendants' omission of this required information because they were (1) frustrated by their inability to identify the entity responsible for the solicitation communications at issue; (2) required to spend time attempting to identify the entity responsible for sending the text messages at issue; and (3) required to spend additional time investigating methods to get Defendants to stop delivering those messages.

97.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff and the Sender Identification Class are entitled to

damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action;

b.    Designating Plaintiff as a class representative of the proposed Classes under Federal Rule of Civil Procedure 23;

c.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.    Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e.    Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f.    Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g.    Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h.    Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i.  Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j.  Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: November 20, 2024.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk
akruzyk@pkglegal.com
Bryan A. Giribaldo
bgiribaldo@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003

*Counsel for Plaintiff and the proposed classes*